# Owensboro Wagon Co., *v.* Hall
## and
# Hall *v.* Owensboro Wagon Co.

*Assumpsit.*

(Decided Feb. 7th, 1907. 43 So. Rep. 71.)

1. *Appeal; Review; Discretion.—* Whether the court will permit a demurrer to be interposed to a plea after the cause is submitted to the jury, is addressed to its discretion, and not reviewable on appeal.
2. *Pleading; Departure.—*It is not a departure to add by amendment counts on a special contract to counts on the common count, where such special contract is the foundation of the action on the common count.

[Owensboro Wagon Co. v. Hall and Hall v. Owensboro Wagon Co.]

3.  *Same; Motion to Strike; Demurrer.*—Pleas that are neither pro-
    lix, irrelevant or frivolous, must be tested by demurrer, and
    not by motion to strike.

4.  *Appeal; Harmless Error.*—Evidence that defendant was about
    76 years of age, although immaterial, was harmless.

5.  *Evidence; Letters; Proof of Genuineness.*—Defendant cannot
    show by letters, purporting to be from plaintiff, that plaintiff
    was notified of a certain fact, without making proof that
    such letters offered in evidence for that purpose, were genu-
    ine, objection having been made on that ground.

6.  *Same; Secondary Evidence; Search for Primary Evidence.*—The
    statement "I cannot find them," is not the equivalent of proof
    that the required search had been made for the primary evi-
    dence, so as to authorize the introduction of secondary evi-
    dence.

7.  *Pleading; Replication.*—To be good a replication must answer
    every material allegation of the plea

8.  *Account; Action on; Verified Account; Affidavits Taken in Other
    States; Authentication.*—Under Section 1799, on account veri-
    ged by affidavit taken before a notary in another State, to
    which affidavit is attached the seal of office of such notary,
    is sufficient authentication, and not objectionable, that a no-
    tary without the State, cannot administer an oath unless au-
    thorized to do so by the law of the State of his residence.

9.  *Sales; Distinguished from Other Transaction; Evidence.*—On
    the issue as to whether the wagons were sold defendant, or
    whether defendant held them as plaintiff's agent, a ware-
    house receipt for the wagons taken by the defendant after
    the commencement of the suit, is admissible as a circum-
    stance to be considered by the jury.

10. *Appeal; Harmless Error; Instructions.*—As a general rule, the
    giving or refusing of abstract or argumentative instructions,
    will not work a reversal of the cause.

11. *Same; Law of the Case; Instructions.*—The giving of an in-
    struction which asserts a proposition contrary to the law of
    the case as formerly decided, is error.

12. *Estoppel; Assertion of Title.*—As to whether the wagons were
    sold to defendant or whether he was holding them as agent
    of the plaintiff, the fact that he stored the wagons in his own
    name claiming them as his own, will not estop him from ex-
    plaining by competent evidence his reasons for so storing
    them.

APPEAL from Bessemer City Court.
Heard before Hon. WILLIAM JACKSON.

Action by Owensboro Wagon Company against John A. Hall. Judgment for defendant. Plaintiff appeals, and defendant takes a cross-appeal. Reversed and remanded.

The complaint was originally on the common counts, and on the second trial was amended by the addition of the sixth and seventh counts, as follows:

"(6) The plaintiff claims of the defendant the sum of ($670.00) six hundred and seventy dollars by reason of a contract in writing as follows:

" 'Owensboro, Ky. 3-7-1901. John A. Hall, Bessemer— Dear Sir: Respecting your request to handle our wagons on consignment in Bessemer, Alabama, and vicinity, we shall be pleased to commission you as your orders may be approved by us from time to time; proceeds of sale, less invoice price, to be your commission. In consideration of our doing so, and extending you this credit, we ask you to undertake and contract as follows:

" 'First. Of all goods, handle and sell our to the exclusion of all other makes.

" 'Second. Until goods consigned hereunder are sold, diligently to do all business required to sell said goods, pay all taxes, freight, and other expenses of same, keep well housed and protected from the weather and in good order. In case of loss by fire or damage or other cause, pay us invoice price.

" 'Third. On the 1st of each month, and whenever requested to do so by us or our authorized traveling salesmen or collectors, to render a statement of all goods on hand.

" 'Fourth. Invoice prices are to be mutually agreed upon at the time orders are accepted for shipment.

" 'Fifth. For all sales, as soon as made, send us cash less 5 per cent. on your note for four months for the amount from date of sale, with purchaser's note indorsed by you as collateral security, if at any time your account exceeds our limit of credit. The cash discount not to be allowed on sales after 12 months from date of each invoice; all remittances to be at invoice prices.

" 'Sixth. To extent of invoice price, moneys, proceeds, or securities taken or received by you on account of goods shall be our property, received and held in trust

[Owensboro Wagon Co. v. Hall and Hall v. Owensboro Wagon Co.]

for us and kept by you as separate funds for us until goods are settled for as above, and the title for all goods shipped on this contract shall be and remain in our name, until we receive settlement therefor.

" 'Seventh. You will, if demanded, purchase at invoice price in cash or your four-months note, with interest at 8 per cent. until maturity, with approved collateral notes attached, if requested, all goods unsold after 12 months from date of each invoice, or at once in case you shall sell or dispose of the merchandise business in which you are engaged.

" 'Eighth. We can revoke this contract at any time if you fail to discharge any obligations hereunder, or if we have reason to believe you are unable to perform the same, and upon the return of goods for any cause, termination or revocation of this contract, you will deliver to us in your town all our goods then on hand in as good condition as when received, paying for any damage to same, free of all charge. If, however, termination is made other than by reason of your act or breach, we will pay actual freight, which shall be a claim against us, subject to offset of any claim we have against you.

" 'Ninth. We deliver all goods free on board, Owensboro, Ky., and will endeavor to ship by cheapest route, making freight as low as possible, but will not be responsible for any other charges.

" 'Tenth. Our failure to enforce at any time any provision of this contract, or our exercising option, hereby conceded, at any time for the time being to waive performance on your part of any of the provisions hereof, shall in no wise impair the validity of this contract or such provision, or our right to enforce the same. If this is satisfactory, please sign as indicated below, and return to us, on receipt of which we will at this office consummate same by our signature as a contract between us, sending you a copy, which embodies our entire understanding and cannot be modified, except by writing duly executed by us. (Signed) Owensboro Wagon Co., by B. M. Settle.

" 'The above is satisfactory. (Signed) John A. Hall.'

214 · SUPREME COURT [Vol.

[Owensboro Wagon Co. v. Hall and Hall v. Owensboro Wagon Co.]

"And plaintiff avers that it made demand upon the defendant to purchase all the unsold wagons then on hand on, to-wit, the 6th day of May, 1902, and the defendant then and there refused to do so.

"(7) Plaintiff as part of this count adopts all the words and figures of the sixth count hereof down to and including the contract between the plaintiff and defendant therein set out, and plaintiff avers that on the 9th day of December, 1901, the plaintiff was informed that defendant had disposed of or sold his mercantile business, and thereafter, to-wit, on the 6th day of May, 1902, demanded that the defendant purchase stock of wagons, etc., then in defendant's hands, as is provided for in the seventh paragraph of said contract, and the defendant then and there refused to purchase as provided in paragraph 7 of this contract."

The defendant interposed a motion to strike the last two counts, because they are departures from the original complaint on the common counts, and because the last two amendments fail to aver or show any cause of action, and on various other grounds not necessary to be set out. Demurrers were filed on practically the same grounds. The court granted the motion, and struck the sixth and seventh counts.

The fourth plea filed by defendant sets up the contract set out in the complaint, and avers that the account upon which this suit is founded is for a lot of wagons shipped by plaintiff under the conditions of the contract, and that long before 12 months expired next after the date of shipment of such wagon the defendant resigned his agency under said contract, offered to settle with plaintiff and deliver the unsold wagons to plaintiff at Bessemer, Ala., and informed the plaintiff that the wagons were there subject to his orders. Said plea also contained an offer to settle and return the wagons. The other acts of the court concerning this plea are sufficiently set out in the opinion.

The fifth special plea is as follows: "The defendant says that said contract as set out in the defendant's fourth plea was made and entered into with reference to and because of the fact that the defendant was at that time engaged in a mercantile business, as is shown

by said contract in and by section 7 thereof, which provides that the defendant should, if demanded, purchase at invoice price in cash or his four-months note, with interest at 8 per cent., with approved collateral note attached, if requested, all goods unsold after 12 months from date of each invoice, or at once in case he sold, or disposed of the mercantile business in which he was engaged. And defendant avers that he disposed of the mercantile business in which he was so engaged by selling the same out in, to-wit, the month of June, 1901, and promptly thereafter gave the plaintiff notice of the fact that he had disposed of his said mercantile business, and offered to turn over to plaintiff all the goods and property he had received from and was holding for it under said contract that had not been disposed of, and also offered to turn over to plaintiff, and did turn over to it, all money it was entitled to or that was owing to it for goods of the plaintiff that had been sold by the defendant under said contract, and he repeated such offer and notice several times, which offer defendant avers he is still ready and willing, and hereby offers, to still carry out and perform. And defendant avers that the plaintiff, thereafter, had full notice of the fact about the defendant having so disposed of his said business as aforesaid, and that, notwithstanding this, the plaintiff refused or declined to take the goods back, and refused or declined to elect or require the defendant to purchase goods which he so held for the plaintiff under said contract; but, to the contrary, the plaintiff insisted in going on and did go on treating the defendant as its agent under and according to the terms of said contract, and the defendant accordingly went on as plaintiff's agent, handling its property under said contract. Wherefore defendant avers that plaintiff lost and waived its right to effectually elect, require, or even demand that the defendant purchase said goods or property, or even treat him as a purchaser, and by reason thereof the plaintiff is estopped from demanding or compelling the defendant in any sense to purchase said property or any part thereof."

The following demurrers were interposed to the fifth plea as amended: "Because the plea does not aver that

the defendant accepted the agency and acted as such agent. Because under the contract the plaintiff had a right to decline to take the goods back. Because the averments of the plea show that the defendant went on handling the goods, wagons, etc., under the contract, thereby disaffirming the establishment of an agency subsequent to the going out of business by the defendant. Because the facts alleged in said plea are insufficient to show that a new contract had been created by the dealings of the parties subsequent to the selling out by the defendant of its mercantile business."

The defendant filed the following plea as plea 7: "The defendant says that the plaintiff, after the time when the defendant sold and disposed of his mercantile business and offered to return and pay for the goods as set up in the defendant's fifth plea, the plaintiff understanding all the circumstances, treated the defendant as its agent in handling the goods of the plaintiff, by running on under said contract of agency in carrying on the business of said agency. Therefore the plaintiff waived and lost its right to treat the defenadt as a purchaser, or even demand or elect to so treat him thereafter."

Demurrers were interposed to this plea: "Because said plea is no defense to this action. Because under said contract, if plaintiff should treat and regard defendant as its agent, it would not be a defense to this action, and show that plaintiff had waived or lost any right thereunder. Because plaintiff had a right to treat defendant as its agent, and according to the terms of said contract plaintiff could maintain this action after treating defendant as such. Under said contract plaintiff had the right to enforce or reject the return of the goods. Said contract contains no condition by which defendant can return goods without the consent of the plaintiff."

The plaintiff replied to the fifth plea as amended, and to the fourth and seventh pleas: "(1) It denies each and every allegation of said plea. (2) That there was no understanding or agreement on the part of the plaintiff that the defendant was to act and did act as agent of the plaintiff after it had knowledge that de-

fendant had sold or disposed of his mercantile business, nor did it instruct the defendant to sell said wagon and remit monthly or otherwise. (3) That, notwithstanding defendant notified plaintiff that he had quit his mercantile business and offered to return the wagons, the defendant claimed said wagons as his own, and stored the same as his own, and paid the storage thereon after he had gone out of the mercantile business. (4) The defendant insisted upon turning over to plaintiff the wagons on hand and settling for those sold, but plaintiff repeatedly told the defendant that it would not accept those terms, but would hold defendant to a compliance with his contract. (5) That it was not notified that the defendant had gone out of business or had quit his mercantile business until December 9, 1901, and that, upon being informed, plaintiff then and there wrote defendant that it had a contract with him which it had complied with, and it expected a compliance on his part. (6) Plaintiff says that it has never treated the defendant as its agent for any purpose since it demanded that he purchase the wagons on hand, as is provided in the seventh paragraph of the said contract. (7) That on, to-wit, the 16th day of August, 1901, the defendant wrote the plaintiff, assuming responsibility of said contract, in words and figures as follows: "I am very sorry that I ever ordered them (referring to the wagons), and would not have done it, if it had not been that Oden insisted so much on it, and, as soon as I got the wagons, he quit and left me with the whole amount of responsibility on my hands, and I don't know how I can meet the responsibility, but I will do the best I can. I will report to you again in a few days. Yours respectfully, John A. Hall. P. S. I don't want to lose anything by one and don't intend to let you lose any on my act. J. A. H.' By which letter plaintiff says the defendant assumed the responsibility of said account and the payment thereof subsequent to his selling out or disposing of his mercantile business as averred in said pleas. (8) That defendant, in signing said contract, agreed in paragraph 10 of the same that our failure to enforce at any time any of the provisions of this contract, or our exercising option, hereby conceded,

to at any time for the time being waive preformance on your part of any provision hereof, shall in no wise impair or affect the validity of this contract, or such provisions, or our right to enforce the same.' That under said contract, and the provisions thereof, the plaintiff did not exercise the option of demanding that the defendant purchase the wagons then on defendant's hands until the 6th day of May, 1902, and by the failure of the plaintiff to make said demand immediately upon the defendant quitting the mercantile business , or the continuing to carry on said business, under the provisions of the contract, the plaintiff did not lose or impair its right to treat the defendant as a purchaser on making demand as provided in said contract."

Demurrers were interposed to these replications as follows: "Separately and severally, to each, from 2 to 8, inclusive, upon the grounds that neither of said replications set up a valid legal defense to the matters and things set out in either said fifth, fourth, or seventh pleas. And especially to replication 2 upon the ground that it is no answer to either of pleas 5 and 7, and in that it neither confesses nor avoids any of the allegations of the same, and because it is merely the general issue. And to replication 3 because it sets up no valid defense to said pleas 5 and 7. And, further, to replication 3 that, even though the defendant did store the wagons as his own, and paid the storage thereon, after defendant had gone out of business, the mere fact of his doing so is no valid legal replication, answer, or defense to the facts set up in pleas 5 and 7. It fails to confess, deny, or avoid, or confess and avoid, the facts averred in said pleas 5 and 7 to the effect that the defendant continued to act as the agent of plaintiff in handling his wagons at the plaintiff's request after the defendant had sold out and disposed of his mercantile business and fully informed the plaintiff thereof. And because said replication fails to aver that there was an agreement between plaintiff and defendant, or any other transaction, by which the title to the property passed from the plaintiff to defendant. To replication 4, because the same sets up no fact constituting a valid legal defense to the matter set up in pleas 5 and 7; because

it is no answer to these plas, and merely sets up what plaintiff told defendant; and because it fails to confess and avoid any of the facts set up in said plea and fails to traverse any fact therein set up." These same demurrers were interposed to all the replications, with the additional demurrers that the replications may be true, and yet the plea be good, and because said replications and each of them leave a material part of the pleas unanswered.

Defendant requested the court to give the following charge, which the court gave: "(4) The court further charges the jury that if you are reasonably satisfied from all of the evidence that the defendant disposed of his mercantile business about June, 1901, and that he promptly thereafter informed the plaintiff that he had disposed of his business, and if you further are reasonably satisfied that the plaintiff, after he had so been informed, went on dealing with him and treating him as its agent under the contract, and that they did this, prior to the expiration of the year next after the contract for handling the wagons, etc., took effect, then I charge you that this would constitute a waiver of the plaintiff's right to elect to treat the defendant as a purchaser of the property."

Written charges numbered 9 and 10, given at the request of the plaintiff, are as follows: "(9) I charge you, gentlemen of the jury, that you must find for the plaintiff unless you believe from the evidence that the plaintiff, subsequent to the demand made upon the defendant to purchase, treated and did business with the defendant and recognized him as its agent. (10) I charge you that if the evidence in this case reasonably satisfies you that the defendant, after demand had been made upon him to purchase said wagons, stored the same and claimed them as his own and paid storage on them, he is then estopped to claim that he was only holding them as agent for the plaintiff."

Charges 1 and 2, requested by the defendant and refused, were the general affirmative charge. Charge 3, refused to defendant, was: "The court further charges the jury that if you are reasonably satisfied from all of the evidence in this case that the defendant disposed of

his mercantile business about June, 1901, and that he promptly thereafter informed the plaintiff that he had disposed of his mercantile business, and if you are further reasonably satisfied from the evidence that the plaintiff, after it had been so informed, went on dealing with him and treating him as its agent under the contract, and that they did this prior to the expiration of the year next after the contract for handling the wagons, etc., took effect, then I further charge you that this would constitute a waiver of the plaintiff's right to elect to treat the defendant as a purchaser of the property, and you must find your verdict for the defendant."

There was judgment for defendant, and from the action of the court on the trial both plaintiff and defendant took this appeal.

W. F. PORTER, and BEN G. PERRY, for appellant, on direct appeal, and appellee on cross appeal.—The court should have permitted appellant to amend his 6th count and after amendment it was not subject to motion to strike.—*Birmingham Ry. & Elec. Co. v. Allen,* 99, Ala. 359. The sufficiency of a plea to be tested by demurrer and not by a motion to strike unless it is prolix, irrelevant or frivolous.—*A. G. S. R. R. Co. v. Clark,* 136 Ala. 461. There was no departure in the amendment.— *Nelson v. Bank of Montgomery,* 139 Ala. 578. Before secondary evidence is admissible the original must be sufficiently accounted for.—1 Greenl. Evi. (16th Ed.) p. 682. Counsel discuss other assignments but cite no authority.

ESTES, JONES & WELCH, and W. K. SMITH, for appellee, on direct appeal, and appellant on cross.—The office of a replication is to reply to a plea, traverse it, confess and avoid it or set up something by way of estoppel and a replication that merely joins issue on a plea or denies the plea or affirms the complaint, is demurrable.—*Wright v. Forgy,* 126 Ala. 389; *H. A. & B. R. R. Co. v. South,* 112 Ala. 642; *L. & N. R. R. Co. v. Mothershed,* 110 Ala. 143. A replication should go to the whole

plea and not a part only.—*Whitehurst v. Bird,* 8 Ala.
375; *Mason v. Craig,* 5 S. & P. 389; *H. A. & B. R. R. Co.
v. South, supra.* A notary public has only such powers
and can exercise only such as are given him by the com-
mercial law unless their powers are enlarged by statute,
which fact must be shown before such acts or things
which are made essential by such acts are admissible in
evidence.—*Chandler v. Hanna,* 73 Ala. 390; *Comer v.
Way & Edmondson,* 107 Ala. 300; *Goree v. Wadsworth,*
91 Ala. 416; *Alabama National Bank v. Chattanooga
B. & S. Co.,* 103 Ala. 63; 21 A. & E. Ency. of Law, 562.

DOWDELL, J.—This is the second appeal in this
cause by the plaintiff, the Owensboro Wagon Company.
When the cause was here on the former appeal, the con-
tract, the foundation of the suit, was construed by this
court in an opinion by Anderson, J., concurred in by
McClellan, C. J., and Tyson and Simpson, JJ.—*Owens-
boro Wagon Co. v. Hall,* 143 Ala. 177, 42 South. 113.
For reasons then stated the defendant's fourth and fifth
pleas were held to be bad, and subject to the demurrers
interposed, and the seventh plea was held to be good,
and not open to the demurrer. No formal judgment was
rendered in this court sustaining the demurrers to the
fourth and fifth pleas, held to be bad, but simply a
judgment of reversal of the judgment of the trial court
in overruling the demurrers to the fourth and fifth
pleas, and a remandment of the cause. This left the
cause for further action to be tried in the trial court
on the demurrers to the said pleas, in accordance with
the views and rulings of this court, unless the parties
saw fit to abandon the demurrers. The case, therefore,
as it stood in the trial court after remandment, was
without any judgment on the demurrers to these pleas.
It appears from the record that, after remandment of
the cause, the defendant amended his fifth plea in con-
formity with the ruling of this court and to meet the
defects pointed out by the demurrer, but nothing was
done toward amending the fourth plea. No judgment
of the court was taken or had on the demurrers origin-
ally filed to this fourth plea. In this state of the rec-
ord it will be presumed on appeal that the plaintiff did

not insist on its demurrer to the fourth plea, but abandoned the same. After the issues were made up, and the cause had been submitted to the jury, the plaintiff then asked leave to file demurrers to the fourth plea, which the court declined to permit. At this stage of the trial, to withdraw the case from the jury and allow the plaintiff to demur to the plea was matter addressed to the discretion of the trial court, and the court's ruling on the same is not revisable on appeal. The fifth plea, as amended, conforming to the views heretofore expressed by this court on former appeal was unobjectionable on grounds assigned in the demurrer filed to it, and the court, therefore, properly overruled the demurrer.

The complaint, as originally filed, was on the common counts. The plaintiff, after the remandment of the cause, by leave of the court, amended its complaint by adding two counts, numbered 6 and 7, on a special contract set out in the complaint as amended. Thereupon the defendant moved to strike the counts added by way of amendment, which motion the court granted, and struck the amendment from the file, to which action of the court the plaintiff duly excepted, and this ruling is here assigned as error. The amendment constituted no departure in pleading, and, while it set up a new claim in the suit different from the common counts, it did not introduce an entirely new and different cause of action from that originally declared on.—*Nelson v. First National Bank*, 139 Ala. 578, 36 South. 707, 101 Am. St. Rep. 52. The defendant had already filed pleas in which it was averred that this same contract, declared on in the amendment to the complaint, was the foundation of plaintiff's suit on the common counts. There were other grounds of the motion to strike; but we do not consider this question further than to say that the proper mode of testing the sufficiency of pleadings, when neither prolix, irrelevant, or frivolous, is by demurrer, and not by motion to strike.—*A. G. S. R. R. Co. v. Clarke*, 136 Ala. 461, 34 South. 917. The court erred in sustaining the motion to strike the amendment.

The age of the defendant was wholly immaterial and irrelevant to any issue in the case, but we are unable to

see wherein the plaintiff was prejudiced by the admission of this evidence; the evidence being that he was about 76 years old.

It was competent and admissible in evidence for the defendant to show that he notified the plaintiff of his going out of the mercantile business. But in doing this, by introducing letters purporting to be from the plaintiff, it was incumbent on the defendant to offer evidence of the genuineness of the letters, when their introduction was objected to on this ground, before the same could become admissible. In the course of the examination of the defendant as a witness in his own behalf, he stated: "I received other letters from the Owensboro Wagon Company, but I can't find them. I don't know what were the contents of these letters." Defendant's counsel then asked the witness: "What was in those leters?" "State the contents, as far as you can remember." The plaintiff objected to the question on the ground that the letters were the best evidence, and that no sufficient predicate had been laid for the introduction of secondary evidence. The court overruled the objection, and the witness than answered, giving his recollection in a general way of the contents of the letters, which answer the plaintiff moved to exclude on the same grounds stated in his objection to the question; but the court refused to exclude, and to all of which action of the court the plaintiff duly excepted. The mere statement of the witness that "I can't find them" (the letters) did not show that he had made search for them, and fell far short of showing a diligent search and failure to find, a necessary predicate for the introduction of secondary evidence of the contents of the letters. The trial court erred in overruling the objection to the question and in admitting this evidence.

There was no error in admitting the statement of accounts offered by the defendant. He testified that he received these statements from the plaintiff, and, further, that he never had any transaction with the plaintiff, as to any wagons, but the one which was the foundation of this suit. Under the issues, we think this evidence of the return to the plaintiff of the unsold wagons competent and admissible.

It is insisted by counsel for the plaintiff that the plaintiff, under the contract, had the option, at the expiration of 12 months from the date of the invoice, of treating the defendant as a purchaser of any wagons remaining in his hands unsold at such time, and that no acts or conduct of the plaintiff before such time arrived, in treating the defendant as its agent in the holding of the wagons after the defendant had disposed of his mercantile business in which he was engaged at the time he entered into the contract, could operate as a waiver of plaintiff's said option to hold the defendant as a purchaser. This insistence is opposed to what was ruled by this court when the case was here on the former appeal. We now adhere to the views then expressed.

Written charge No. 4, given at the request of the defendant, correctly stated the law of the case as heretofore ruled, and was otherwise unobjectionable, and therfoie properly given.

This brings us to the consideration of the assignments of error on the cross-appeal.

To the defendant's fifth plea as amended, and to the fourth and seventh pleas, the plaintiff filed special replications, numbered from 2 to 6, inclusive. These replications were not made to these pleas separately, but to them as a whole. Neither of these replications deny the allegations of the pleas, except in part, leaving material allegations without denial and without confession and averment of matter in avoidance. A good replication to a plea should be either a traverse of the plea or a confession and avoidance. It may deny in part, and confess and avoid in part; but in any event it must answer every material allegation of the plea to constitute good pleading.—*H. A. & B. Ry. Co. v. South,* 112 Ala. 643, 20 South. 1003; *Whitahurst v. Byrd,* 8 Ala. 375; *Mason v. Crabb,* 3 Stew. & P. 389. The replications do not deny the allegations in the pleas of the plaintiff's waiver of its option to elect to hold the defendant as a purchaser, nor do the facts set up in the replication amount to a confession and avoidance of the allegations of a waiver. The demurrers should have been sustained to the replications; and for the same reasons the demurrers should have been sustained to

special replications 7 and 8, which were filed to the fifth and seventh pleas.

The objection to the admission of the verified account, on the ground that a notary public without the state cannot administer an oath, unless authorized to do so by the law of the state of his residence, is untenable. The authority of a notary public of another state to take and certify to affidavits in certain cases is provided for by our statute (section 1799 of the Code of 1896), which reads as follows: "Affidavits required in the commencement or progress of any suit or judicial proceedings may be taken without this state before any commissioner appointed by the governor of this state, and the judge or clerk of a federal court, or judge of any court of record, or notary public, who shall certify under their hands and seals of office, if any." To the affidavit in this case was attached the seal of office of the notary. This was sufficient authentication and certification under the statute. The account was itemized and verified, and was admissible in evidence under section 1804 of the Code. The suit was upon account, and it was averred in the complaint that the account was verified, and no counter affidavit was filed by the defendant under the provisions of the statute.

The warehouse receipt, although signed and given by the defendant after the commencement of the suit, was nevertheless a circumstance to be considered by the jury under the issues in the case. If, as a matter of fact, the defendant claimed the wagons as his property at the time he gave the warehouse receipt, it was competent evidence to go to the jury; and it is of no consequence, in determining the competency of the evidence, that it occurred subsequent to suit brought.

It is the better and safer practice to refuse charges which are purely abstract, or when argumentative; but the giving of such charges does not, as a rule, constitute reversible error.

Charge 9, given at the request of the plaintiff, was erroneous, and should have been refused. Under the law of the case as stated above, if the plaintiff waived

its option under the contract to hold the defendant as a purchaser of the wagons, then the plaintiff by a subsequent demand could not restore that right of option.

Charge 10, requested by plaintiff, should not have been given. If the defendant had stored the wagons in his own name, claiming them at the time as his own, this would not have estopped him from explaining by competent evidence his conduct in so doing. This the charge prevented him from doing.

There was no error in refusing charges 1, 2, and 3, requested by the defendant.

For the errors pointed out, the cause will be reversed, both on the direct and cross appeal.

Reversed and remanded.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.