## GILCHRIST *et al. v.* HELENA, H. S. & S. R. Co. *et al.*

*(Circuit Court, D. Montana.* September 14, 1891.)

**1. FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS IN A STATE.**
Comp. St. Mont. 1888, § 442, p. 720, requiring foreign corporations, before doing business in the state, to file, in the office of the recorder of the county wherein it intends to carry on business, a copy of its charter, and certain verified statements as to its capital, does not prevent a foreign trust company which has not complied therewith from purchasing securities of a railroad company in the state, and taking a mortgage upon its property to secure them, since such isolated act is not doing business in the state.

**2. MORTGAGES FROM RAILROAD COMPANIES—RECORDING.**
The general statute, (Comp. St. Mont. 1888, p. 1073, § 1555,) declaring that all mortgages of real or personal property executed by an incorporated company shall be recorded in the recorder's office of every county wherein any part of the property is situated, and shall be accompanied by the affidavit specified in Comp. St. § 1538, relating to chattel mortgages, does not by implication repeal the earlier special statute, (Comp. St. Mont. 1888, p. 824, § 706,) relating to mortgages by railroad companies, and providing that the record in the office of the secretary of state of a mortgage by a railroad company, whose line is wholly or in part in Montana, shall be notice to all parties without further record.

**3. PLEADING—ANSWER—LEGAL INFERENCES.**
An answer containing mere allegations of law and legal inferences should be stricken out as irrelevant and immaterial.

In Equity. On exceptions to answer to cross-bill.

*Toole & Wallace* and *A. K. Barbour,* for cross-complainant.

*Henry C. Smith, Sterling & Muffly, Walsh & Newman,* and *T. D. Penry,* for defendants.

KNOWLES, J. One of the defendants in the above-entitled action, the Northwestern Guaranty Loan Company, filed therein its cross-bill asking for affirmative relief against plaintiffs and all the other defendants. The said defendants have answered this bill. A part of them join in one answer, a part in another answer, and John Steadman, J. S. Keerl, and the Helena Steam Heating & Supply Company each in separate answers. In each one of these answers the following allegations are made, to-wit:

" (1) That the Farmers' Loan & Trust Company of New York, in said bill mentioned, has not, and at the time the pretended mortgage was executed had not, filed in the office of the secretary of Montana, or in the office of the clerk and recorder of said Lewis and Clarke county, an authenticated copy of its certificate of incorporation, or a verified and attested statement showing the name of said corporation, and the location of its office, the amount of its capital stock, and the amount actually paid in, the amount of its assets, and the cash value thereof, or any of the other statements required by the laws of the state of Montana, and therefore was not qualified or competent to make or enter into a contract within the state of Montana. (2) That said pretended mortgage was not executed, verified, and recorded as provided in the laws of the state of Montana, in that it is not recorded in the office of the clerk and recorder of Lewis and Clarke county, wherein the property is situated, and does not contain the affidavit prescribed by section 1555 of the statutes of Montana. (3) That the said Northwestern Guaranty Loan Company, or the Farmers' Loan & Trust Company, or its assigns, should not be heard to assert, and should not assert, a claim under said pretended mortgage adverse

to these defendants, because they accepted said pretended mortgage, and the bonds issued thereunder, with full knowledge of the laws of the state of Montana, which declare and provide that all judgments procured for work and labor performed in and upon the property of any railroad company, or for material furnished for use upon the property of any such company, should and would be a lien on all the property of said railroad company, and would be prior and paramount to the lien of any bond or mortgage upon the property of said railroad company. And the said Farmers' Loan & Trust Company, knowing the provisions of said law, and knowing that if all claims for labor performed or material furnished and used upon the property of said railroad company were not paid, the judgments obtained therefor would be a lien upon all the property of said railroad company, which lien would be prior and paramount to the lien of said pretended mortgage, inserted a claim in said pretended mortgage as follows: 'That said railroad company shall and will also promptly pay, in the ordinary course of business, all moneys due, and all liabilities incurred, for labor, supplies, material, right of way, lands, equipments of every kind done, furnished, acquired, or made for or in connection with the maintenance, operation, renewal, repair, replacement, or improvement of said road, and its branches and appurtenances;' and the said Farmers' Loan & Trust Company thereby acknowledge that all such claims would be liens and take precedence of any lien it could acquire by bond or mortgage; and the said Northwestern Guaranty Loan Company took said bonds, if it purchased them at all, knowing these facts."

Complainant in the cross-bill filed its objections to each of the above allegations in said several answers. These objections were all argued and submitted together, and the points involved are the same as to each answer. The objection to the first of the above allegations is that the same is immaterial, and not pertinent to any issue presented in the cross-bill. The point sought to be raised by this allegation is that complainant, not having filed a copy of its certificate of incorporation, etc., could not make or enter into any contract within the state of Montana, or the territory thereof. There is a statute of this state (see Comp. St. Mont. 1888, § 442, p. 720) which makes it necessary for any foreign corporation, before doing any business of any kind, nature, or description whatever within Montana, to file in the office of the county recorder of the county wherein it intends to carry on or transact business a duly-authenticated copy of its charter or certificate of incorporation, and also certain statements mentioned in said allegation, under oath. It does not appear from any allegations in these answers that the Farmers' Loan & Trust Company is attempting to do business generally in Montana. It does not appear therein that said Farmers' Loan & Trust Company purchased the bonds above mentioned and described in the cross-bill in Montana, or that the mortgage executed to it to secure the payment of the same was delivered in Montana to it. I do not think the purchasing of securities, or the accepting of a mortgage upon property from a company in Montana, can be considered as doing business in Montana. It does not appear that said corporation was engaged in any other transaction connected with any other person or company in Montana than the defendant Helena, Hot Springs & Smelter Railroad Company. It has been held by the supreme court that the entering into one contract or the transacting of an isolated business act is not the carrying on or doing

business in a state. *Manufacturing Co.* v. *Ferguson,* 113 U. S. 727, 5 Sup. Ct. Rep. 739. This clause in the answers of defendants is immaterial, and the objection to the same well taken.

The same objection was interposed to the second of the above allegations. It appears that in section 1555, Comp. St. Mont. 1888, p. 1073, there is a statute which provides as follows:

"That all mortgages or deeds of trust of both real and personal property within the territory, heretofore or hereafter executed by any incorporated company, shall be governed by the laws relating to mortgages or deeds of real property, and be recorded in the office of the recorder of every county where any part of said property is situated, and the same shall be valid notwithstanding the possession of such property is retained by such person or persons, company or corporation: provided, that any mortgage or deed of trust which shall hereafter be executed shall be accompanied by the affidavit specified in section 1 of the act entitled ' An act concerning chattel mortgages,' approved February 19, 1881, (section 1538, Comp. St. Mont.,) and which affidavit may be made on behalf of any such company or corporation by the president, secretary, or managing agent thereof."

Wherever the term "territory" occurs in the statutes of Montana, by a provision in the constitution of Montana, the term "state" should be inserted. This is a general law, and from its terms would seem to apply to all corporations, and to require an affidavit attached to all mortgages executed by the same, such as is required to be attached to chattel mortgages, and that these mortgages should be recorded with the county recorder in the proper counties. It is not necessary to consider what would be the effect upon a mortgage between the parties thereto if there should be a failure to comply with the above provisions. There is another statute upon the subject of mortgages executed by railroad corporations. The Helena, Hot Springs & Smelter Railroad Company is a railroad corporation. This latter statute provides that a railroad corporation organized under the laws of Montana, or the United States, or any other state whose line may be wholly or partly in this state, may make and negotiate its bonds, and execute a mortgage or deed of trust to secure the same, and contains this clause:

"Provided, that the record thereof in the office of the secretary of the territory shall be notice of its existence and contents to all parties whomsoever, without any further record thereof whatsoever, and it shall be the duty of the secretary to record in his office any such mortgage or deed of trust when presented for that purpose."

See Comp. St. Mont. 1888, § 706, p. 824.

This statute may have been passed some seven days before the former. If the former repeals this, it must do it by implication. But the rule is well settled that the law does not favor the repeal of a statute by implication. *Chew Heong* v. *U. S.,* 112 U. S. 536, 5 Sup. Ct. Rep. 255. And, if a special provision of a statute can reasonably well consist with the general legislation upon the subject, both may stand, one applying to the special case or subject, and the latter generally. *State* v. *Stoll,* 17 Wall. 425; *Ex parte Crow Dog,* 109 U. S. 556, 3 Sup. Ct. Rep. 396. "A general later affirmative law does not abrogate an earlier special one by

mere implication." Endl. Interp. St. § 223. It is evident from these authorities that the statute in regard to mortgages executed by railroad corporations cannot be considered as repealed by the first general statute above cited. Both may stand, one being the general law of the land, the other applying to a special subject. Under the special statute, there was no need of recording the mortgage in the office of the county recorder, and the requisites of an affidavit do not apply so as at least to affect the validity of the mortgage between the parties, if at all. The objection to these allegations were well taken.

The allegations last set forth, to which complainant filed its objections, amounting to a charge that the same were irrelevant and immaterial, I think must be considered for the most part as an argument; and it is not proper to insert an argument in a pleading. Story, Eq. Pl. § 852. There are also allegations of law or legal inferences in this portion of defendants' answer, and this is improper pleading. In the case of *Dillon* v. *Barnard*, 21 Wall. 430, the supreme court said:

"The positions thus asserted must find their support, if at all, in the provisions of the indenture of mortgage. If not sustained there, they are not sustained anywhere. The averment of the bill as to the purport and meaning of the provisions of the indenture, the object of their insertion in the instrument, and the obligations they impose upon the corporation and the trustees, and the rights they conferred upon the plaintiff when his contract was approved, are not admitted by the demurrer. These are matters of legal inference, conclusions of law upon the construction of the indenture, and are open to contention, a copy of the instrument itself being annexed to the bill, and therefore before the court for inspection. A demurrer only admits facts well pleaded; it does not admit inference and argument, however clearly stated."

This would seem to be a very direct authority as to the force of such pleading. In Daniell's Ch. Pr. *545, in speaking of the force of a demurrer, this language is used:

"It does not, therefore, admit any matters of law which are suggested in the bill, or inferred from the facts stated; for, strictly speaking, arguments or inferences, or matters of law, ought not to be stated in pleading."

I am therefore of the opinion that the objection to these allegations is also well taken. In making this ruling, I wish it understood, I express no opinion upon the point of law sought to be presented in these last allegations as to the construction of section 707, Comp. St. Mont. p. 824. When the proper facts appear, it will be time enough for the court to consider this question. For the reasons stated the portions of each one of the answers above named which were objected to are ordered to be stricken therefrom.